FILED

2021 JUL 28 PM 3:39

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 8:21-cr-244-MSS-AAS

TATIANA POWER
A/K/A "TANYA POWER"
A/K/A "TANIA POWER"

18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(2)(A)
18 U.S.C. § 1956(a)(1)(B)(i)

SEALED

# INDICTMENT

The Grand Jury charges:

## COUNT ONE
## (Conspiracy to Commit Money Laundering)

At times material to this Indictment:

### A. Introduction

1. Tatiana Power, a/k/a "Tanya Power," a/k/a "Tania Power," was a resident of the Southern District of Florida. Power, originally from Moldova but a naturalized United States Citizen, was married to Kenneth Power. Together and with others, they operated the Newstar Websites, an internet-based enterprise engaged in the production, advertisement, and sale of depictions of children engaged in sexually explicit conduct under the guise of "child modeling."

*Overview of the Newstar Websites*

2. The Newstar Websites were a collection of websites, hosted on servers in the United States and abroad, that were purportedly dedicated to legal child

modeling. In truth and in fact, the Newstar Websites advertised, sold, distributed, and otherwise made available child pornography and child erotica depicting the supposed child "models." The Newstar Websites were comprised of three subcategories of websites:

a. The "Newstar Model Collection" was a collection of over 100 separate webpages hosted at separate websites. In general, each website was dedicated to a specific brand or line represented by a child-victim. The child-victims depicted on the Newstar Model Collection sites ranged in age between approximately six to 17-years old. Typically, the child-victim's stage name appeared in each Newstar Model Collection website alongside the words "Newstar," "Tinymodel," or "Sweet." Each Newstar Model Collection site hosted galleries of images of the respective child-victim, some of which depicted minors engaged in "sexually explicit conduct," as defined in 18 U.S.C. § 2256(2)(A), including child-victims dressed in revealing or transparent underwear or sexually suggestive costumes while exhibiting their clothed genitals and pubic areas in a lewd and lascivious manner. A limited number of "preview" images in the Newstar Model Collection pages' galleries were freely available to the public to view, but greater access and more content required purchasing a subscription. Multiple subscription plans were offered, commonly priced at $49.99 (34 days), $79.99 (60 days), and $99.99 (90 days).

b. Clipmonster.net was a stand-alone website that hosted additional content of the child-victims and lines featured on the Newstar Model Collection sites. Clipmonster.net was often associated with the Newstar Model Collection sites through links and advertising banners. Clipmonster.net made available for purchase individual images and videos of the child-victims, some of which involved minors engaged in "sexually explicit conduct," as defined in 18 U.S.C. § 2256(2)(A).

c. Cyber-pay.net was a website used by the Newstar Model Collection sites and Clipmonster.net to process credit card and crypto-currency purchases for all content and access sold on those sites.

*The Newstar Enterprise*

3. Founded on an unknown date but no later than 2005, the Newstar Enterprise, which operated in the Middle District of Florida and elsewhere, was a network of individuals (both United States citizens and foreign nationals) as well as associated corporate entities and fraudulently opened payment processing accounts and bank accounts controlled by those individuals, that conspired to facilitate and aid the creation, function, and operation of the Newstar Websites.

4. Members of the Newstar Enterprise—directly and through entities they controlled—sourced, ordered, produced, advertised, sold for profit, and distributed child pornography and erotica on the Newstar Websites; funded the enterprise; laundered the proceeds of the enterprise; and shared in the profits. These members of the Newstar Enterprise included, but were not limited to, the following:

a. Kenneth Power (deceased), a resident of the Southern District of Florida, was a principal member of the Newstar Enterprise who directed and controlled functions essential to the operation of the Newstar Websites and, more broadly, the Newstar Enterprise.

b. Tatiana Power ("Power"), the defendant, a resident of the Southern District of Florida, who resided with her late husband, Kenneth Power, was a principal member of the Newstar Enterprise who managed the Enterprise's financial and accounting operations, including facilitating payments to foreign and domestic members of the Newstar Enterprise.

c. M.R.B. (deceased), a resident of the Middle District of Florida, maintained web servers essential to the operation of the Newstar Websites and Newstar Enterprise. M.R.B. also facilitated payment processing and money transfers on behalf of the Newstar Enterprise.

d. Patrice Eileen Wilowski-Mevorah ("Wilowski"), a resident of the Middle District of Florida, directed and performed financial functions essential to the Newstar Enterprise. Wilowski opened payment processing, merchant, and bank accounts under false names and pretenses for the Newstar Enterprise, and facilitated, conducted, and concealed monetary transactions involving revenue from the Newstar Websites on behalf of the Newstar Enterprise.

e. P.G.V., a foreign national residing abroad, directed and controlled foreign functions essential to the operation of the Newstar Websites and Newstar Enterprise.

f. D.L., a foreign national residing abroad, assisted the Enterprise with the recruitment, photographing, and filming of foreign child-victims for the Newstar Websites.

g. V.O.S., a foreign national residing abroad, assisted the Enterprise with maintaining servers that hosted the Newstar Websites and uploading content of child-victims onto those servers.

h. Mary Lou Bjorkman, the wife of M.R.B. and a resident of the Middle District of Florida, opened and maintained payment processing, merchant, and bank accounts under false pretenses and facilitated and conducted monetary transactions on behalf of the Newstar Enterprise.

5. Many of the above-detailed Newstar Enterprise members created, converted, used, and acted directly through corporate entities for and on behalf of the Enterprise, including:

a. Power Trading, Inc. ("Power Trading"), which was incorporated in or around January 2009 in the State of Florida, by registered agent Kenneth Power.

b. Bjorkman International, Inc. ("Bjorkman International"), which was incorporated in or around November 2003 in the State of Florida, by registered agent M.R.B.

c. Bjorkman Trans-Tech Inc. ("Bjorkman Trans-Tech"), which was incorporated in or around May 2003 in the State of Florida, by registered agent M.R.B. Bjorkman Trans-Tech sometimes used the fictitious name "Evil Angel."

d. Hope Trans Tech, Inc. ("Hope Trans Tech"), which was incorporated in or around August 2018 in the State of Florida, by registered agent Mary Lou Bjorkman, with the registered fictitious name "Evil Angel."

e. Wilowski Management, Inc. ("Wilowski Management"), which was incorporated in or around April 2005 in the State of Florida, by registered agent Wilowski.

f. Wilowski MGT, LLC ("Wilowski MGT"), which was incorporated in or around February 2018 in the State of Florida, by registered agent Wilowski.

**B. <u>The Conspiracy</u>**

6. Beginning on an unknown date, but as least as early as in or around 2005, and continuing through and including in or around November 2019, in the Middle District of Florida, and elsewhere, the defendant,

TATIANA POWER,
A/K/A "TANYA POWER,"
A/K/A "TANIA POWER,"

did knowingly and willfully combine, conspire, confederate, and agree with others, both known and unknown to the Grand Jury, including other members of the

Newstar Enterprise, to commit money laundering, in violation of 18 U.S.C. § 1956, that is:

a. to transport, transmit, and transfer, a monetary instrument and funds from a place in the United States to and through a place outside the United States, and to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of specific unlawful activity, to wit, the production, advertisement, and distribution of visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. §§ 2251(a) and (d)–(e) and 2252(a)(2) and (b)(1), bank fraud, in violation of 18 U.S.C. § 1344, as well as an offense against a foreign nation involving the sexual exploitation of children as contemplated by 18 U.S.C. § 1956(c)(7)(B)(vii), in violation of 18 U.S.C. § 1956(a)(2)(A); and

b. to conduct a financial transaction affecting interstate and foreign commerce, namely, to transport, transmit, and transfer monetary instruments and funds which involved the proceeds of specified unlawful activities, to wit, the production, advertisement, and distribution of visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. §§ 2251(a) and (d)–(e) and 2252(a)(2) and (b)(1), bank fraud, in violation of 18 U.S.C. § 1344, as well as an offense against a foreign nation involving the sexual exploitation of children as contemplated by 18 U.S.C. § 1956(c)(7)(B)(vii), knowing that the transaction was designed, in whole or

in part, to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activities, and knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

### C. Manner and Means of the Conspiracy

7. The manner and means by which the Newstar Enterprise conspirators sought to accomplish the objects of the conspiracy included, among others, the following:

a. It was part of the conspiracy that Newstar Enterprise conspirators would and did build, maintain, use, and operate the Newstar Websites and other Newstar Enterprise applications on domestic and international servers controlled by Newstar Enterprise members.

b. It was further part of the conspiracy that the Newstar Enterprise conspirators would and did entice, solicit, and recruit males and females under the age of 18, some of whom were prepubescent and most of whom resided outside of the United States, to use as "child models" and to produce images and videos of these child-victims, some of which depicted child-victims engaged in sexually explicit conduct.

c. It was further part of the conspiracy that the Newstar Enterprise

conspirators would and did advertise, receive, distribute, and sell images and videos of "child models" on the Newstar Websites, some of which depicted child-victims engaged in sexually explicit conduct.

d. It was further part of the conspiracy that the Newstar Enterprise conspirators would and did charge its customers in the United States and abroad to view, download, or otherwise access content on the Newstar Websites, some of which depicted child-victims engaged in sexually explicit conduct

e. It was further part of the conspiracy that Newstar Enterprise conspirators would and did build, maintain, host, and use cyber-pay.net to process financial transactions for memberships and purchases of images and videos from the Newstar Websites.

f. It was further part of the conspiracy that the Newstar Enterprise conspirators would and did use other individuals and entities, such as Power Trading, Bjorkman International, Bjorkman Trans-Tech, Hope Trans Tech, Wilowski Management, and Wilowski MGT, to further the aims of and conceal the true nature of the Newstar Enterprise.

g. It was further part of the conspiracy that Newstar Enterprise conspirators would and did create, convert, and use a sham business entity purportedly engaged in selling costume jewelry (*i.e.* "Evil Angel Jewelry," "Evil Angel," and "Evel Angel Jewelry"), as a means to conceal the true nature of the Newstar Websites and the Newstar Enterprise.

h. It was further part of the conspiracy that Newstar Enterprise conspirators would and did conceal and disguise payments to and from the Newstar Websites by representing that the transactions were with a purported costume jewelry company variously referred to as "Evil Angel Jewelry," "Evil Angel," and "Evel Angel Jewelry."

i. It was further part of the conspiracy that the Newstar Enterprise conspirators would and did use fraudulently-opened financial accounts in the names of entities including Power Trading, Bjorkman International, Bjorkman Trans-Tech, Hope Trans Tech, Wilowski Management, and Wilowski MGT, and engage in financial transactions between themselves and these entities to conceal, receive, and share in the proceeds of the Newstar Enterprise.

j. It was further part of the conspiracy that Newstar Enterprise conspirators would and did transfer and transmit by various means, including wires, checks, and cash withdrawals and deposits, proceeds exceeding $9,436,928 derived from the Newstar Enterprise.

k. It was further part of the conspiracy that Newstar Enterprise conspirators would and did conceal, misrepresent, and hide, and cause to be concealed, misrepresented, and hidden, the purpose of acts performed in furtherance of the conspiracy.

All in violation of 18 U.S.C. § 1956(h).

**COUNTS TWO THROUGH FOUR**
**(International Promotional Money Laundering)**

**A. Introduction**

1. Paragraphs 1 through 5 of Count One of this Indictment are hereby realleged and incorporated by this reference as though fully set forth herein.

**B. Monetary Transactions**

2. On or about the dates set forth below, in the Middle District of Florida and elsewhere, the defendant,

TATIANA POWER,
A/K/A "TANYA POWER,"
A/K/A "TANIA POWER,"

transported, transmitted, and transferred, and aided and abetted others in the transport, transmission, and transfer of, a monetary instrument and funds from a place in the United States to and through a place outside the United States, and to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of specific unlawful activity, that is, the production, advertisement, and distribution of visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. §§ 2251(a) and (d)–(e) and 2252(a)(2) and (b)(1), as well as an offense against a foreign nation involving the sexual exploitation of children as contemplated by 18 U.S.C. § 1956(c)(7)(B)(vii), as follows:

| Count | Date | Amount | Description |
|---|---|---|---|
| TWO | Dec. 23, 2016 | $300 | Power Trading Inc.'s Wells Fargo Bank account ending in -8586 in Florida to V.O.S.'s Alfarumm Bank account ending in -0635 in Russia |
| THREE | May 11, 2017 | $2,650 | Power Trading Inc.'s Wells Fargo Bank account ending in -8586 in Florida to Inoworks Multimedia D.L.'s UBS Bank account ending in -5261Y in Switzerland |
| FOUR | May 11, 2017 | $750 | Power Trading Inc.'s SunTrust Bank account ending in -5672 in Florida to P.G.V.'s DSK Bank account ending in -8793 in Bulgaria |

In violation of 18 U.S.C. §§ 1956(a)(2)(A) and 2.

**COUNT FIVE**
**(Concealment Money Laundering)**

**A. Introduction**

1. Paragraphs 1 through 5 of Count One of this Indictment are hereby realleged incorporated by this reference as though fully set forth herein.

**B. Monetary Transactions**

2. On or about October 31, 2019, in the Middle District of Florida, and elsewhere, the defendant,

TATIANA POWER,
A/K/A "TANYA POWER,"
A/K/A "TANIA POWER,"

did knowingly conduct, attempt to conduct, and aided and abetted others to conduct, a financial transaction affecting interstate and foreign commerce, that is, a November 6, 2019 wire of $7,070.50 from Wilowski Management, Inc.'s Regions Bank account ending in -7487 to Power Trading Inc.'s PNC Bank account ending in -4807, which

involved the proceeds of a specified unlawful activity, that is, the production, advertisement, and distribution of visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. §§ 2251(a) and (d)–(e) and 2252(a)(2) and (b)(1), as well as an offense against a foreign nation involving the sexual exploitation of children as contemplated by 18 U.S.C. § 1956(c)(7)(B)(vii), knowing that the transaction was designed, in whole or in part, to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activities, and that while conducting, attempting to conduct, and aiding and abetting others to conduct, such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

In violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2.

**FORFEITURE**

1. The allegations contained in Counts One through Five are incorporated by reference for the purpose of alleging forfeiture, under the provisions of 18 U.S.C. § 982(a)(1).

2. Upon a conviction of a violation of 18 U.S.C. § 1956, the defendant,

TATIANA POWER,
A/K/A "TANYA POWER,"
A/K/A "TANIA POWER,"

shall forfeit to the United States, pursuant 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense and any property traceable to such property.

3. The property to be forfeited includes, but is not limited to, the following:

a. An order of forfeiture in the amount of approximately $9,436,928.21, which represents the proceeds obtained from and/or property involved in the offenses;

b. The real property located at 1425 Lantana Drive, Weston, Florida 33326, being the same premises conveyed to Kenneth Power by virtue of the deed recorded on March 15, 2011, real property located at **1425 Lantana Drive, Weston, Florida**, being the same premises conveyed to Kenneth Power and Tatiana Power, on March 15, 2011, including all improvements thereon and appurtenances thereto, the legal description for which is as follows:

LOT 5, BLOCK 2, OF SECTOR 6 EAST, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 155, PAGE 4 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA. Subject to easements, restrictions and reservations of record and to taxes for the year 2011 and thereafter.

c. Two 3TB Hitachi hard disks, type HDWH130;

d. One 2TB Hitachi hard disk, serial number (JK1101)B9J9G78F;

a. One 2TB Hitachi hard disk, serial number (JK11A8)B9J40N1F;

b. One 2TB Hitachi hard disk, serial number (MN1220)F30YY9XD;

c. One 2TB Hitachi hard disk, serial number (MN1240)F33KWWRD;

d. One Gateway desktop computer;

e. One Lenovo desktop computer;

f. One HP pavilion computer;

g. One WD MyPassportSlim device; and

h. Twelve SanDisc storage cards.

4. If any of the forfeitable assets described above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred, sold to, or deposited with a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or,

e. has been commingled with other property which cannot be subdivided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

A TRUE BILL,

Foreperson

KARIN HOPPMANN
Acting United States Attorney

By:

FRANCIS D. MURRAY
Assistant United States Attorney

By:

KYLE P. REYNOLDS
Trial Attorney
Child Exploitation and Obscenity Section
U.S. Department of Justice, Criminal Division

By:

CARLTON C. GAMMONS
Assistant United States Attorney
Acting Chief, Special Victims Section

FORM OBD-34
July 21

No.

UNITED STATES DISTRICT COURT
Middle District of Florida
Tampa Division

THE UNITED STATES OF AMERICA

vs.

TATIANA POWER
A/K/A "TANYA POWER"
A/K/A "TANIA POWER"

INDICTMENT

Violations: 18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(2)(A)
18 U.S.C. § 1956(a)(1)(B)(i)

A true bill,

[signature]

Foreperson

Filed in open court this 28th day

of July 2021.

Clerk

Bail $